IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY GILLMAN, Esquire, | : | |
| as *guardian ad litem* for | : | |
| Aidan Pomper | : | CIVIL ACTION |
|         *Plaintiff*, | : | No. 23-3757 |
| v. | : | |
| | : | |
| AAA MID-ATLANTIC | : | |
| INSURANCE GROUP | : | |
|         *Defendant*. | : | |

**MEMORANDUM**

**JOSÉ RAÚL ARTEAGA**                                                               August 14, 2024
**United States Magistrate Judge**[1]

      Plaintiff Jeffrey Gillman, as guardian *ad litem* for Aidan Pomper ("Pomper") brings claims of bad faith and breach of contract against Defendant AAA Mid-Atlantic Insurance Group because AAA did not pay underinsured motorist benefits it allegedly owed to Pomper after he suffered injuries when a vehicle struck him. AAA moves to dismiss the bad faith claim in Pomper's Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because Pomper still has not sufficiently pled a plausible bad faith claim, AAA's Motion is granted and Pomper's bad faith claim is dismissed.

---

[1] This case was reassigned to me after the parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (See ECF 19, 20.)

I.      **BACKGROUND**

On November 22, 2022, Pomper was walking across a road and was injured when Aaron Boyd hit him with his vehicle. (ECF 18 at ¶ 4.) After settling with Boyd's insurance in exchange for a release of all claims, Pomper made an underinsured motorist claim to AAA on April 21, 2023. (*Id.* ¶¶ 20-21.) Pomper alleges he "qualified as an insured" at the time of the incident under a AAA-issued policy providing underinsured motorist benefits. (*Id.* ¶ 6.) The AAA policy was issued to Reyna Pomper, Pomper's mother. (*Id.* ¶¶ 12, 42.) Pomper alleges AAA knew that Boyd was at fault and knew that Pomper had suffered "[b]lunt trauma to R leg, skull fracture, subdural hematoma, arm contusions, temporal fracture, and fracture of spine." (*Id.* ¶¶ 22-23.) AAA set an initial reserve of $50,000 for Pomper's claim, an amount which he alleges was "inadequate." (*Id.* ¶ 24.)

To confirm Pomper's status as an insured under Reyna Pomper's policy, AAA's adjuster "requested documents showing Pomper's residence at the time of the" incident, so Pomper provided a copy of his Pennsylvania photo ID to AAA three days after he filed his claim. (*Id.* ¶¶ 25-26.). On the same day, AAA "requested a third-party company run a household check to determine Pomper's residency." (*Id.* ¶ 27.) On May 15, 2023, AAA gave Pomper a DMV search that showed he had a New Jersey address (*i.e.*, an address that precluded coverage). (*Id.* ¶ 28.) Pomper responded that it was an old address and supplied AAA with: (1) a Lexis search showing his "current" residence was in Philadelphia; (2) a deed showing the Pompers' New Jersey residence had sold in 2016; (3) an affidavit from Marc Pomper; (4) photos of Pomper's driver's license reflecting the Philadelphia address; (5) a police report showing the Philadelphia address; and

2

(6) hospital records showing the Philadelphia address. (*Id.* ¶ 29.) Eight days later, AAA informed Pomper's counsel that it needed additional proof of residency. (*Id.* ¶ 30.) The next day, Pomper gave AAA "a copy of a cell phone bill from the period of the incident, addressed to [him] at the [Philadelphia] address." (*Id.* ¶ 31.) On June 9, 2023, a new adjuster assigned to Pomper's claim asked for copies of his "tax returns as additional proof of residency." (*Id.* ¶¶ 2=32, 35.) Six days later, Pomper advised AAA "that he has not been employed for several years due to severe mental illness, but he has been receiving Social Security payments," and, on June 21, 2023, he gave AAA copies of "bank statements for one year prior to the incident addressed to Pomper" at the Philadelphia address. (*Id.* ¶ 36.) That day, Pomper also gave AAA "all medical records and billing" and formally demanded the $500,000 policy limit. (*Id.* ¶ 37.)

On July 12, 2023, Pomper's counsel reiterated his coverage demand, asked AAA if its adjuster needed additional time to complete her review of his claim, and advised AAA of Pomper's intention to file suit in seven days. (*Id.* ¶ 38.) AAA's adjuster said she was still evaluating Pomper's demand and then, on July 20, 2023, told Pomper's counsel that AAA "was not in a position to extend UIM coverage because one page of Pomper's medical records indicated that Pomper had eloped from a group home the day before the accident." (*Id.* ¶ 40.) The next day, Pomper's counsel informed AAA's adjuster that although "Pomper had been at an in-patient hospital facility prior to th[e] accident, he was in the process of being admitted to a transitional facility when he left of his own volition and returned home to" the Philadelphia address on the day before the incident. (*Id.* ¶ 41.)

3

On August 3, 2023, AAA's adjuster told Pomper's counsel that she would formally respond to his demand on August 10, 2023. (*Id.* ¶ 39.) Five days later, AAA increased its reserve to $200,000. (*Id.* ¶ 40.) On August 10, 2023, instead of responding to Pomper's demand, AAA's adjuster called Reyna Pomper "to further discuss Pomper's residency." (*Id.* ¶ 42.) She reported that "Pomper lives in her basement at her [Philadelphia] home except for the times he has had to be hospitalized." (*Id.* ¶ 43.)

One week later, AAA increased the claim reserve to $250,000 and Pomper's counsel emailed AAA's adjuster to ask about the status of his claim. (*Id.* ¶¶ 44-45.) The adjuster did not respond and, instead, AAA "retained independent coverage counsel to review Pomper's residency and render an advisory opinion as to coverage." (*Id.* ¶¶ 46-47.) Pomper's counsel emailed AAA's adjuster for an update again on August 22, 2023, but she did not respond. (*Id.* ¶ 48.)

The next day, Pomper initiated this action by complaint in the Philadelphia Court of Common Pleas, asserting claims for breach of contract (Count I) and bad faith (Count II). (*See* ECF 1.) On September 1, 2023, AAA's adjuster told Pomper's counsel that AAA had retained coverage counsel and was still waiting for their opinion. (*Id.* ¶ 50.) On September 13, 2023, coverage counsel told AAA "that Pomper was, in fact, entitled to UIM benefits under [AAA's] policy." (*Id.* ¶ 51.) AAA did not offer to resolve Pomper's claim and did not tell Pomper's counsel about the coverage determination until November 29, 2023. (*Id.* ¶¶ 53-54.) Pomper's counsel then asked for a response to his demand. (*Id.* ¶ 55.) AAA responded that it "was now contesting liability . . . ." even though

4

AAA's adjuster had changed the liability code to "not at fault" on June 9, 2023. (*Id.* ¶¶ 34, 55.)

After AAA removed the case to this Court, Pomper filed an Amended Complaint. (ECF 22 at ECF ¶ 3.) AAA filed a motion to dismiss Pomper's bad faith claim, which Judge Juan R. Sánchez granted without prejudice. (ECF 22 at ECF ¶ 4.)

Pomper filed a Second Amended Complaint, reasserting a claim for bad faith on May 7, 2024. (ECF 18.) AAA moves to dismiss Pomper's bad faith claim again. (ECF 22.)

## II.     LEGAL STANDARDS

To withstand dismissal, Pomper's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). The Court is "required to . . . draw all inferences from the facts alleged in the light most favorable to" Pomper. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In the case where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. The Court may not "accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual

5

allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).

When a complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (*quoting Iqbal*, 556 U.S. at 679). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786-87). If Pomper does not allege sufficient facts to "nudge" his bad faith claim "across the line from conceivable to plausible," it must be dismissed. *Twombly*. 550 U.S. at 570.

### III.   DISCUSSION

Pennsylvania's bad faith statute permits a Court to award interest, punitive damages and attorneys' fees if it "finds that the insurer has acted in bad faith toward the insured." 42 Pa. Con. Stat. § 8371. In insurance matters, "bad faith" is "any frivolous or unfounded refusal to pay proceeds of a policy." *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (citation omitted). Before Pomper's bad faith claim can proceed to discovery, he must show (1) that AAA did not have a reasonable basis for denying benefits under the policy and (2) that AAA "knew of or recklessly disregarded its lack of a reasonable basis" when it declined to pay his claim for underinsured motorist

benefits. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). The facts alleged must demonstrate that AAA acted with a "dishonest purpose . . . through some motive of self-interest or ill will." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). An insurer can exhibit bad faith conduct through actions including: "a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, or failure to promptly acknowledge or act on claims." *Snider v. State Farm Fire & Cas. Co.*, 644 F. Supp. 3d 141, 146 (E.D. Pa. 2022) (citation and internal quotation marks omitted). *Rancosky* requires "an objective inquiry into whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented . . . ." 170 A.3d at 374. Negligence or poor judgment—such as valuing a claim lower than the amount the insured believes it is worth—does not, by itself, prove that the insurer acted in bad faith. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012).

Courts dismiss bad faith claims that rely on conclusory or boilerplate allegations because conclusory statements alone do not provide the factual basis necessary for awarding bad faith damages. *See Diaz v. Progressive Advanced Ins. Co.*, No. 19- 6052, 2020 WL 868133, at *1 (E.D. Pa. Feb. 21, 2020); *Elican v. Allstate Ins. Co.*, No. 17- 3105, 2017 WL 6525781, at *4 (E.D. Pa. Dec. 21, 2017); *Soldrich v. State Farm Fire & Cas. Co.*, No. 15- 1438, 2015 WL 7568442, at *3 (E.D. Pa. Nov. 25, 2015). "A plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017); *see also Mattia v. Allstate Ins.*

*Co.*, No. 14-2099, 2014 WL 2880302, at \*4 (E.D. Pa. June 24, 2014) (explaining that plaintiffs must "describe who, what, where, when, and how the alleged bad faith conduct occurred") (internal citation omitted).

Pomper's First Amended Complaint was dismissed because he did not allege enough facts to explain how or why AAA acted unfairly or unreasonably. (ECF 14 at 4.) His Second Amended Complaint provides more details about his contacts with AAA than his prior pleading. So, it is not entirely the case that he alleges "bad faith . . . for essentially the same reasons as outline[d] in Plaintiff's first amended complaint," as AAA contends. (ECF 22 at ECF ¶ 6.) He now includes details about the dates when he communicated with AAA and the delays between his request for coverage and AAA's responses. (ECF 18 at ¶¶ 25-51). Nevertheless, AAA again asserts that Pomper "has failed to allege sufficient facts to sustain a cause of action for bad faith or an award of punitive damages." (ECF 22 at ECF ¶ 13.) The Court agrees.

Pomper alleges that AAA "knew and/or recklessly disregarded its lack of reasonable basis for denying [his] claim" (ECF 18 at ¶ 59.) He alleges that AAA's investigation into his residence was drawn-out, unnecessary, and unfounded. (*Id.* at ¶ 65.) He argues that the allegations in his Second Amended Complaint can withstand dismissal because they "show a continued and unfounded refusal to adjust his claim in good faith by initially evaluating the claim as 'not at fault' but denying benefits based on an assertion that Pomper was ineligible due to residency." (ECF 23-1 at 8.) More is required to plead bad faith.

To begin, "[s]imply pleading a delay is insufficient" to show bad faith "because accident claims investigations can take months even without aggravating factors." *Williams v. State Farm*, No. 21-0058, 2021 WL 2661615, at *4 (E.D. Pa. June 29, 2021) (citation and internal quotation omitted). While more than twelve months have passed since Pomper presented his underinsured motorist claim to AAA on April 20, 2023. (ECF 18, ¶¶ 21, 60), he sued AAA just 124 days after he sought AAA's coverage on August 22, 2023. (ECF 1.) Pomper has not alleged a delay that is sufficient to permit the Court to reasonably infer AAA's bad faith. *See Robbins v. Metro. Life Ins. Co.*, No. 08-0191, 2008 WL 5412087, at *8 (E.D. Pa. Dec. 29, 2008) (holding a "four month delay is not, by itself, so unusual or unreasonable to indicate bad faith" under Pennsylvania's bad faith statute); *see also 3039 B St. Assocs., Inc. v. Lexington Ins. Co.*, 740 F. Supp. 2d 671, 682 (E.D. Pa. 2010) ("[E]ven if all delay were attributable to the insurer, a period of approximately thirteen months . . . would not, without more, be sufficient to establish bad faith.") (citation omitted); *Doherty v. Allstate Indem. Co.*, No. 15-CV-05165, 2017 WL 1283942, at *40 (E.D. Pa. Apr. 6, 2017) ("[S]pans of thirteen to fifteen months to process claims are reasonable and do not automatically give rise to bad faith claims.") (citation and internal quotation omitted).

Moreover, AAA's failure to pay Pomper's claim at Pomper's request before AAA finished its investigation does not amount to bad faith. "[T]he failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." *Smith*, 506 F. App'x at 137. "It is not unusual that the parties would disagree over the value of [a] Plaintiffs' [underinsured motorist] claim . . . ." *Litman v. GEICO Cas. Co.*, No.

9

22-4530, 2023 WL 8091982, at *3 (E.D. Pa. Nov. 21, 2023). Similarly, Pomper's allegations about AAA's adjustment of the reserve amounts do not serve to state a claim for bad faith. "[T]here is nothing improper with an insurer valuing a claim differently than its insured . . . ." *Mcintosh v. USAA Cas. Ins. Co.*, No. 23- 02958, 2023 WL 6543504, at *2 (E.D. Pa. Oct. 6, 2023) (citing *Smith* 506 F. App'x at 137). The Court cannot infer bad faith from the fact that AAA repeatedly changed the reserve for Pomper's claim, particularly where he alleges the amount increased each time rather than decreased.

Pomper argues that "it is the totality of all of [AAA's] egregious actions. . . that provide sufficient factual support for [his] claim." (ECF 23-1 at 10.) He complains that AAA requested documents to prove his residency in a "piecemeal fashion, over the course of several weeks" and argues it did so in order to prove that he did not meet residency qualifications. (ECF 23-1 at ECF p. 8.) "An insurer has an obligation to conduct a good faith investigation . . . ." *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, 646 F. Supp. 3d 610, 622 (E.D. Pa. 2022). And AAA was "entitled to investigate legitimate defenses against claims made by its insured, and to raise those defenses in litigation." *Litman*, 2023 WL 8091982, at *5. That does not mean that the process AAA used to reach its coverage determination had to be "flawless or that its investigatory methods eliminated possibilities at odds with its conclusion." *Id.* (citation omitted). Pomper has not alleged sufficient facts to show AAA's investigation of his claim was frivolous, unfounded, unfair, or otherwise indicative of bad faith. The Second Amended Complaint does not show that AAA "lacked a reasonable basis" for investigating whether Pomper's residence precluded coverage under the policy issued to his mother. Indeed, they show

...

there was at least some question about where Pomper resided at the time of the incident. Pomper's allegations do not suggest that AAA "engaged in inexcusable periods of inactivity" or that its communications with Pomper were "otherwise inadequate." *Litman*, 2023 WL 8091982, at *4. *Cf. Maillis v. Geico Cas. Co.*, No. 23-1747, 2024 WL 3293352, at *3 (W.D. Pa. July 3, 2024) (holding the plaintiff alleged facts "minimally sufficient to state a plausible bad faith claim" where the plaintiff alleged the insurer "essentially ignored the claim and failed to communicate regarding its merits for over a year"). Pomper's additional allegations still are not sufficient to state a claim for bad faith that is plausible, rather than possible.

## IV.   CONCLUSION

For the reasons set forth above, AAA's Motion to Dismiss is granted. Because Pomper has already had opportunities to plead a bad faith claim and has been unable to do so, further amendment would be futile, so Count II is dismissed with prejudice.[2]

An appropriate Order follows.

---

[2] Federal Rule of Civil Procedure 15(a)(2) permits courts to "freely give leave" to amend "when justice so requires," but it is within the Court's discretion to determine when leave to amend is appropriate. *Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017). The Court may deny leave to amend "based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Id.* at 149.