IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY GILLMAN, Esquire, | : | |
| as *guardian ad litem* for | : | |
| Aidan Pomper | : | CIVIL ACTION |
| *Plaintiff*, | : | No. 23-3757 |
| v. | : | |
| | : | |
| CSAA GENERAL | : | |
| INSURANCE COMPANY | : | |
| *Defendant.* | : | |

## MEMORANDUM ORDER

AND NOW, this 5th day of March 2025, upon consideration of the Second Motion for Reconsideration of Plaintiff Jeffrey Gillman, Esquire, as Guardian *ad Litem* for Aidan Pomper (ECF 38), Defendant CSAA General Insurance Company's Response (ECF 39), and Plaintiff's Reply (ECF 40), it is **ORDERED** that the Motion is **DENIED** for the following reasons.

Plaintiff again asks the Court to apply Federal Rule of Civil Procedure 54(b) to reconsider its August 14, 2024 decision (ECF 25 and 26), which granted Defendant AAA Mid-Atlantic Insurance Group's[1] Motion to Dismiss Plaintiff's bad faith claim. (ECF 38-2 at 2-3; ECF 40 at 1.) Plaintiff contends Defendant acted in bad faith because it did not offer to pay underinsured motorist ("UIM") benefits it allegedly owed to Pomper after the suffered injuries when a vehicle struck him. As the Court has already explained, to recover for bad faith, Plaintiff must show that Defendant (1) did not have a reasonable

---

[1] CSAA General Insurance Company has since been substituted for AAA Mid-Atlantic Insurance Group as the proper Defendant. (ECF 33.)

basis for denying benefits under the policy and (2) "knew of or recklessly disregarded its lack of a reasonable basis" when it declined to pay his claim for underinsured motorist benefits. *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). Plaintiff must demonstrate that Defendant acted with a "dishonest purpose . . . through some motive of self-interest or ill will." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Bad faith conduct may include: "a lack of investigation, unnecessary or unfounded investigation, failure to communicate with the insured, or failure to promptly acknowledge or act on claims." *Snider v. State Farm Fire & Cas. Co.*, 644 F. Supp. 3d 141, 146 (E.D. Pa. 2022) (citation and internal quotation marks omitted). Negligence or poor judgment—such as valuing a claim lower than the amount the insured believes it is worth—does not, without more, prove that an insurer acted in bad faith. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012).

After considering Plaintiff's first motion to reconsider the August 14, 2024 decision, the Court held that "[i]f, and only if, discovery reveals sufficient evidence to support a plausible bad faith claim, Plaintiff may explain why further amendment is not futile in a renewed motion for reconsideration of the Court's determination to dismiss his claim with prejudice." *Gillman v. AAA Mid-Atl. Ins. Grp.*, No. 23-3757, 2024 WL 4466674, at *2 (E.D. Pa. Oct. 9, 2024). (ECF 28 (same).) Plaintiff now argues that reconsideration is required for the bad faith claim he seeks to pursue, which is predicated on Defendant's allegedly having "adopted a practice of reversing those factual determinations that had already concluded with no reasonable basis for the reversal; only the desire to deny or

delay payment of the claim." (ECF 40 at 5.)  He contends that "new facts have come to light after the deposition of Yohanny Henry that support" further reconsideration.  (ECF 38-2 at 3.) Defendant responds that Plaintiff's Motion should be denied because it presents "nothing beyond a restatement of his displeasure with the Court's prior decision and a recapitulation of the exact same claims asserted previously . . . ."  (ECF 39-1 at 10.)

Courts within this circuit differ with respect to what standard applies to reconsideration of interlocutory orders under Rule 54(b). *See McCowan v. City of Phila.*, No. 19-3326, 2020 WL 6262182, at *2 (E.D. Pa. Oct. 23, 2020) (collecting cases). Some require parties seeking reconsideration to demonstrate "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Shields v. Wiegand*, No. 20-2999, 2023 WL 2955897, at *1 (E.D. Pa. Apr. 14, 2023) (citations omitted). Others apply a more lenient standard, asking whether reconsideration is "consonant with justice . . . ." *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016).  No matter what, reconsideration does not provide "a second bite at the apple."  *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995); *see also Qazizadeh*, 214 F. Supp. 3d at 295.

Plaintiff has not shown that reconsideration is required under either standard. He maintains that Henry's deposition provided new information that is "key" to his ability to sufficiently plead facts to support a bad faith claim. (ECF 38-2 at 4.)  He contends that according to her testimony, Defendant "had determined that Aidan Pomper was not at fault" by June 9, 2023.  (*Id.* at 6.)  Based on this, Plaintiff argues that Defendant had all the

3

information it needed to settle Pomper's UIM claim—coverage, liability, and damages—by no later than September 13, 2023, and, because it has made no offer of settlement to Pomper since then, Plaintiff has a viable bad faith claim. (ECF 38 at 4-5.)

According to Henry, when making determinations with respect to "coverage, liability, damages," she does not address those issues "in a particular order" and her "focus" with respect to the claim at issue in this case "was coverage." (Henry Dep. (ECF 38-4) at 27:6-14.) While Plaintiff contends that Henry's recent testimony establishes that Defendant had determined liability by June 9, 2023, upon review, her testimony only establishes that she coded the claim "not at fault" on that date "because the [driver's] carrier, as reported to [Defendant], had accepted liability." (ECF 39-1 at 8 (citing ECF 38-4 at 54:13-19).) Henry explained that she did so "for the purpose to simply to have [sic] the file coded with something . . . ." (ECF 38-4 at 54:16-17.) She testified that she did not know why the underlying carrier had accepted liability and whether its decision to do so had been "a business decision." (*Id.* at 107:10-17.) Henry also explained that it was her understanding that Defendant's "fault determination is independent of th[e] fault determination of another insurance company" and that she had not been told that she was required "to follow the liability determination of an adverse carrier." (*Id.* at 58:20-59:3.) Henry also testified that there is an ability to "reassess liability based on additionally learned facts at a later time." (*Id.* at 106:12-14.) She explained "that at any point in time throughout the claim, liability can be reassessed as information comes forward. So we may make a determination but then as we continue our investigation, we may change that determination." (*Id.* at 108:23-109:4.) Henry testified that she "did

4

not make a [liability] determination" herself.  (*Id.* at 109:20-24.)  She also testified that she "was only involved in the claim . . . up until a certain period of time when suit was filed" and that while the claim was being processed at her level, the reason why the claim could not be negotiated and resolved "was on coverage."  (*Id.* at 26:13-22.)

Henry's testimony does not alter the Court's previous determination that Plaintiff has not set forth sufficient facts to plead a plausible bad faith claim.  (ECF 40 at 5.)  For Plaintiff to proceed with a bad faith claim based on delay, he must show that (1) the delay is attributable to Defendant, (2) Defendant had no reasonable basis for the actions it undertook which resulted in the delay, *and* (3) Defendant knew or recklessly disregarded the fact that it had no reasonable basis to deny payment.  *See Mirarchi v. Seneca Specialty Ins. Co.*, 564 F. App'x 652, 655 (3d Cir. 2014); *see also Tomaszewski v. Allstate Ins. Co.*, No. 19-0080, 2022 WL 16553375, at *13 (E.D. Pa. Oct. 28, 2022). As the Court previously explained, "[s]imply pleading a delay is insufficient" to show bad faith "because accident claims investigations can take months even without aggravating factors." *Gillman for Pomper v. AAA Mid-Atl. Ins. Grp.*, No. 23-3757, 2024 WL 3824861, at *4 (E.D. Pa. Aug. 14, 2024) (quoting *Williams v. State Farm*, No. 21-0058, 2021 WL 2661615, at *4 (E.D. Pa. June 29, 2021)) (further citation and internal quotation omitted).

Henry's testimony—that she coded Pomper's claim as "not at fault" to have the file "coded with something," when a liability determination can be reassessed "at any point in time"—does not suffice to show that Defendant's liability determination was conclusive by June 9, 2023. Even if it did, it does not show that Defendant had no

5

reasonable basis for failing to settle Pomper's UIM claim before he filed his Complaint[2] in state court on August 22, 2023 (ECF 1 at ¶¶ 23-31), less than three months after June 9, 2023, and just 124 days after he first sought UIM coverage on April 20, 2023. (*See* ECF 18, ¶¶ 21, 60.). As a result, it also fails to show that Defendant knew or recklessly disregarded the fact that it had no reasonable basis for the delay.

Plaintiff maintains that Henry's testimony demonstrates Defendant's "continuous pattern of reversing its own factual determinations with no new facts to support that reversal." (ECF 40 at 5.) However, the plausibility standard requires more than a "sheer possibility that [Defendant] has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). It remains that Plaintiff has alleged that Defendant's investigation into Pomper's residency—*i.e.,* its coverage investigation—continued between April 20, 2023, and at least August 17, 2023, just days before Plaintiff initiated his bad faith claim against Defendant. (ECF 18 ¶¶ 23, 25-31, 35-36, 42, 47.) As the Court already explained, "[t]he Second Amended Complaint does not show that [Defendant] 'lacked a reasonable basis' for investigating whether Pomper's residence precluded coverage under the policy issued to his mother." *Gillman*, 2024 WL 3824861, at *5. Nothing in Henry's testimony changes this. It does not demonstrate that Defendant

---

[2] Plaintiff argues, correctly, that the filing of his complaint "did not absolve [Defendant] of its ongoing duty to investigate, evaluate and attempt to resolve Pomper's UIM claim." (ECF 38-2 at 8, ¶ 21.)  The Pennsylvania Superior Court has held that bad faith claims "may extend to the misconduct of an insurer during the pendency of litigation." *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999).  Nevertheless, Plaintiff still must set forth sufficient facts to plead a bad faith claim.

delayed payment on Pomper's UIM claim because of any "dishonest purpose" or "motive of self-interest or ill will." *Nw. Mut. Life Ins. Co.*, 430 F.3d at 137.

Henry's testimony does not convert Plaintiff's bad faith claim from one that is conceivable into one that is plausible, so Plaintiff's motion is **DENIED**. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). He has not shown that that there is new evidence which is sufficient to change the Court's prior analysis or that it would be consonant with justice to permit his bad faith claim to proceed.

            **BY THE COURT:**

            _____
            **HON. JOSÉ RAÚL ARTEAGA**
            *United States Magistrate Judge*
            *Eastern District of Pennsylvania*